## STATE OF CONNECTICUT *v.* WILLIAM M. TROTTER

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 17-10335

Argued November 21, 1966—decided January 27, 1967

*Howard R. Steeg,* of Bristol, for the appellant (defendant).

*Robert P. Sneideman,* prosecuting attorney, for the appellee (state).

LEVINE, J. In a trial to the jury, the defendant was convicted of operating a motor vehicle while

under the influence of intoxicating liquor and of reckless driving, in violation of §§ 14-227a and 14-222 of the General Statutes. His appeal assigns error in the denial of his motion for a directed verdict, in the failure to charge the jury on his right to counsel, and in the court's conclusion that the defendant's constitutional rights were not violated. The appeal was submitted upon an agreed statement of facts which was approved by the court rather than upon the usual finding in a jury case providing the claims of proof of the parties. There is nothing in the record to indicate that a motion for a directed verdict was made. In fact, the evidence discloses that the defendant made a "motion to dismiss on the following grounds" at the conclusion of the state's case and thereafter, on the denial of the motion, proceeded to submit evidence. A motion for a directed verdict may be submitted only when the case is ready to be committed to the jury by the court. Practice Book § 480. This means that both sides must rest and neither thereafter can submit evidence. In this case, after his motion to dismiss was denied, the defendant submitted his complete defense, including two witnesses and two exhibits. The defendant's titling of the motion as one for a directed verdict is not sufficient to change the motion from its real nature as a motion to dismiss, the denial of which is not appealable. The claim of error with respect to the charge cannot be considered since the defendant failed to submit any requests to charge, made no objections, and took no exception at the conclusion of the charge. Practice Book § 249; *Antz* v. *Coppolo,* 137 Conn. 69, 73; *State* v. *Buteau,* 136 Conn. 113, 125; *Albrecht* v. *Rubinstein,* 135 Conn. 243, 246.

The last claim of error is directed to the denial of the defendant's constitutional right to an attorney. The facts agreed upon disclose that the defend-

ant was arrested December 19, 1965, in the city of Bristol, for the two offenses previously enumerated, at about 6:07 p.m. and was at that time orally advised of his right to counsel and his right to remain silent. He was then taken to the Bristol police station at 6:15 p.m. and sometime after his arrival there requested the right to telephone counsel on more than one occasion. The officer replied that the defendant could call his lawyer when he was through with him. Thereafter, at 7:05 p.m., tests were performed on the defendant and an alcohol influence report filled out. At 7:30 p.m. the defendant was given a uniform traffic ticket, and at 7:40 p.m. he signed the WA 1 form, which acknowledged that he had been advised of his constitutional rights.

The defendant failed to address motions to the verdict as is required in a criminal case tried to the jury. The appeal may not be taken from the verdict; rather error may be assigned in the action of the trial court on motions directed to the verdict such as a motion to set aside the verdict, a motion for judgment non obstante veredicto or a motion in arrest of judgment. Practice Book §§ 600, 1023; *State* v. *Schofield,* 114 Conn. 456, 459; *State* v. *Frost,* 105 Conn. 326, 331; *State* v. *McCoy,* 4 Conn. Cir. Ct. 109, 115; *State* v. *Butrewich,* 3 Conn. Cir. Ct. 352; Maltbie, Conn. App. Proc. §§ 181, 182, 201, 207. Had the defendant made a motion for a directed verdict as he claims, its denial could be reviewed only by his making the further motion to set aside the verdict. *H. Wales Lines Co.* v. *Hartford City Gas Light Co.,* 89 Conn. 117, 126; see Practice Book §§ 255, 800.

The question of the defendant's constitutional rights should have been raised by a motion to suppress illegally obtained evidence or by objection to

the introduction of evidence allegedly obtained in violation of his constitutional right to an attorney. Since, however, the state has seen fit to agree to a statement of facts and to agree further that the only matter involved in this appeal is the defendant's constitutional right to an attorney, we shall consider the question.

The case was tried May 20, 1966, and therefore does not come within the principles enumerated in *Miranda* v. *Arizona,* 384 U.S. 436, since it was prior to June 13, 1966, the date from which *Miranda* is applied prospectively. *Johnson* v. *New Jersey,* 384 U.S. 719. Such rights as this defendant is entitled to are set forth in *Escobedo* v. *Illinois,* 378 U.S. 478, 490, which holds that "where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon* v. *Wainwright,* 372 U.S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

The agreed statement of facts recites only that after the defendant's arrival at the station and the denial of his request to telephone counsel, "tests were performed and the alcoholic influence report form made out." From this meager description we are unable to discover what incriminating statements were obtained from the defendant in viola-

tion of his fifth amendment rights, namely, that he may not be compelled to be a witness against himself. If the defendant means those physical tests usually given by police officers at police stations to defendants to test their physical coordination, and the information furnished by the defendant for an alcoholic influence report, as the incriminating statements, the rule covering the situation is stated as follows: "It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. *Boyd* v. *United States,* 116 U.S. 616. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber* v. *California,* 384 U.S. 757, 763. These principles decide the issue raised by the defendant that he was denied his right to an attorney in violation of the sixth amendment. The agreed statement of facts does not disclose what incriminating evidence, if any, was secured by the police, and since the defendant was not entitled to any privilege against the evidence disclosed by the physical tests usually given in police stations, we hold that he was not denied the assistance of counsel.

In addition, it should be noted that evidence obtained in violation of a defendant's constitutional

rights does not prevent the prosecution of that defendant. The defendant's remedy is by a timely motion to suppress the evidence or by objection to the admission of the evidence so obtained. "Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, [he] would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. While the general common-law practice is to admit evidence despite its illegal origins, this Court in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes or federal rules or procedure . . . . Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book." *United States* v. *Blue,* 384 U.S. 251, 255.

There is no error.

In this opinion PRUYN and KINMONTH, Js., concurred.