94 N.J. Super. 71 (1967)
226 A.2d 757
STATE OF NEW JERSEY, PLAINTIFF,
v.
WALTER McKENNA, JOHN QUINN, GEORGE DIAMOND, MICHAEL KERR AND RICHARD SERRA, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Criminal Division.
Decided February 3, 1967.
*72 Mr. Thomas E. Durkin, Jr., for defendants Kerr and Serra.
Mr. Samuel D. Bozza, for defendants McKenna and Diamond.
*73 Mr. Joseph C. Glavin, Jr., for defendant Quinn.
Mr. Michael F. Riccardelli, for plaintiff (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
CONKLIN, J.S.C. (temporarily assigned).
Defendants have been indicted by the Essex County grand jury for extortion, conspiracy, neglect of official duties and official misconduct. In addition, defendants Kerr and Serra have been indicted for false swearing. Prior to trial the prosecutor's office of Essex County moved for a court order to compel defendant McKenna to submit to a tape recording of his voice. The purpose of obtaining this tape recording is to produce a voice graph from the voice pattern of defendant McKenna in order to compare this graph with one prepared from a recording already in possession of the prosecutor's office.
Initially, it must be understood that the requested recording will be words concerning any subject defendant wishes to speak upon, and shall in no way be related to the indictments now facing him. It must also remain clear throughout this opinion that this court is in no way passing upon the admissibility into evidence of the tape recording currently held by the prosecutor's office. Rather, the question here is whether directing a defendant in a criminal proceeding to submit to a tape recording of his voice for the purpose of comparison in any way violates the constitutional protections of the Federal or State Constitutions.
This is a case of novel impression in this State, although the underlying principles can be said to have been founded in a long series of cases collected in State v. King, 44 N.J. 346 (1965). The oral argument centered primarily on the privilege against self-incrimination embodied in the Fifth Amendment to United States Constitution. The Fifth Amendment is now made applicable to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). On June 20, 1966, *74 the United States Supreme Court rendered its opinion in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In that case the court was squarely faced with the question of whether the extraction of blood for analysis in a case involving operation of a motor vehicle while under the influence of intoxicating liquors violates the privilege against self-incrimination. In a 5-4 decision the court found that it did not.
There is a close analogy between the issues there involved and the question we are asked to decide today. It has long since been established that there are certain tests and examinations which are not violative of the privilege encompassed in the Fifth Amendment, and among these are the taking of fingerprints, photographing, physical examination for identifying characteristics, and voice identification tests. State v. King, supra; State v. Alexander, 7 N.J. 585 (1951); Bartletta v. McFeeley, 107 N.J. Eq. 141 (Ch. 1930), affirmed 109 N.J. Eq. 241 (E. & A. 1931), and State v. Cerciello, 86 N.J.L. 309 (E. & A. 1914). While voice identification tests have been sanctioned, these tests were conducted by the simple method of compelling a defendant to speak while within hearing distance of the victim or a witness to the crime, and having either the witness or the victim indicate that this was indeed the voice he heard at the time of the alleged crime.
Today we take another step which, while aiding the prosecutor in the performance of his duty, shall also add another weapon to the arsenal of those falsely accused of criminal conduct. For if the voice graph does not clearly indicate that the incriminating recording does indeed contain defendant's voice, there is little chance that he could be convicted because of that recording. Indeed, he may be entirely vindicated.
Turning to the substantive question of the Fifth Amendment, it is clear that the scope of the privilege is not coterminous with the complex and intertwined values it seeks to protect. Rather, as the Supreme Court held in Schmerber:
*75 "* * * the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. * * *" (at p. 1830)
Because of the importance of the above passage and the varying connotations given to the words "testimonial" and "communicative," the Supreme Court inserted a footnote, which, because of the light it adds to the subject now before us, is here included.
"A dissent suggests that the report of the blood test was `testimonial' or `communicative,' because the test was performed in order to obtain the testimony of others, communicating to the jury facts about petitioner's condition. Of course, all evidence received in court is `testimonial' or `communicative' if these words are thus used. But the Fifth Amendment relates only to acts on the part of the person to whom the privilege applies, and we use these words subject to the same limitations. A nod or head-shake is as much a `testimonial' or `communicative' act in this sense as are spoken words. But the terms as we use them do not apply to evidence of acts non-communicative in nature as to the person asserting the privilege, even though, as here, such acts are compelled to obtain the testimony of others." (fn. 5, at p. 1830)
From this it can readily be seen that we are here faced with the same set of circumstances. The recording to be taken by the prosecutor's office is solely for the purpose of analysis by an expert so that it may be established that this other recording is or is not the voice of the accused. From this determination testimony will be adduced in court for consideration by the jury. Once again we feel constrained to indicate that the constitutional questions raised by the admission of the recording presently held by the prosecutor are not now before us.
It is the impression of this court, based upon the line of cases culminating with Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the "communicative" or "testimonial" evidence protected by the Fifth Amendment is that by which the State obtains knowledge solely within the defendant's possession concerning *76 the crime with which he is accused, and that such knowledge was obtained by moral or physical coercion. The system of American justice demands that the State carry the burden of producing evidence sufficient to convict one it seeks to punish. This burden should not, however, be considered as limiting the State in its use of the swift strides forward in the fields of technology and science. It is through the effective and constitutional uses of new methods that the public may rest more secure in the safety of their persons and property, while concurrently assuring a defendant of accurate and undeniable aid in protecting him from baseless prosecution and conviction.
Another criterion enters the spectrum at this point, and that is the concept of fundamental fairness. For all is naught if, even though deciding that compulsion to submit to a tape recording does not violate the Fifth Amendment, it does not meet the minimal requirement of due process as regards this oft-stated criterion of fairness. Cf. Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); State v. King, supra. We find no violation of the sense of justice and fairness implicit in the guarantees of the Federal Constitution. The accused here is merely required to speak into the microphone of a device capable of recording the sound of his voice, the voice, like fingerprints and facial features, being distinctive from individual to individual. It is a clearly distinguishable physical characteristic. Additionally, defendant may use any words on any subject and may not be required to make any reference to the acts surrounding the indictment. Clearly, this is as objective as a fingerprint and should be considered accordingly.
Finally, N.J.S. 2A:84A-19(a) states that "no person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition." (Emphasis added)
*77 Considering voice as a physical characteristic, it is clear that this statute provides for the request here sought.
While the weight and effect to be given to any scientific evidence such as here requested will ultimately rest with the jury, it is nevertheless important that every effort be made to employ the multi-faceted technological advances made by science to insure not only the peace of the citizenry but the freedom of the individual.
Motion granted. Let an order be entered.