J. Irwin Shapiro, J.
This is an application by the District Attorney of Queens County, on notice to the respondent and his attorney, for an order directing that a lineup be held in the Manhattan House of Detention for Men and that the inmate, Thomas Palermo, be shaved of his beard under the direction of the prison warden for his appearance in the lineup.
The inmate, Thomas Palermo, is alleged to be one of the two perpetrators of an armed robbery of the Provident Loan Association on February 17, 1969. It is asserted that the robbery was committed at approximately 10:15 a.m. by two clean-shaven robbers and that at approximately 12:30 p.m. on the day of the robbery, Thomas Palermo was observed and was still clean-shaven. Since his incarceration in the Manhattan House of Detention for Men on February 26, 1969, after a conviction for robbery in the first degree in Supreme Court, Richmond County, he has refused to shave and has grown a beard which substantially covers and hides his face. The District Attorney’s basis for this application is that the respondent’s hirsute adornment acts as a disguise which will make identification difficult, if not impossible.
The mere viewing of a suspect in a compulsory lineup does not violate the constitutional privilege against self incrimination embodied in the Fifth Amendment. There is a distinct difference between requiring an accused from displaying his bodily features and compelling him to testify against himself. (Caldwell v. United States, 338 F. 2d 385, cert. den. 380 U. S. 984.) One is permissible; the other is not.
Not only is the privilege against self incrimination not violated by being compelled to participate in a lineup, but a defendant may be required to perform physical acts or demonstrations without invasion of his constitutional privileges. Thus, compelling a defendant to put on a blouse to see if it fits has been held not to be violative of Fifth Amendment rights. (Holt v. United States, 218 U. S. 245, 252.) In rejecting the claim of constitutional privilege under the Fifth Amendment, Mr. Justice Holmes speaking for the court said (pp. 252-253): “ The prohibition of compelling a man * * * to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.”
In United States v. Wade (388 U. S. 218), a bank was robbed by a man with a small strip of tape on each side of his face. *762 While Wade was in custody and without notice to his lawyer, an F. B. I. agent arranged a lineup made up of Wade and five or six other prisoners. Strips of tape were placed on each, including Wade, and they all were directed to utter words allegedly uttered by the robber. Wade was identified as the culprit. In sustaining the propriety of what was done, Mr. Justice Beennait said (pp. 222-223): “ We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a ‘ testimonial ’ nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. We held in Schmerber, supra, at 761, that the distinction to be drawn under the Fifth Amendment privilege against self-incrimination is one between an accused’s ‘ communications ’ in whatever form, vocal or physical, and ‘ compulsion which makes a suspect or accused the source of “ real or physical evidence,” ’ Schmerber, supra, at 764. We recognized that ‘ both federal and state courts have usually held that * * * [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.’ Id., at 764. Hone of these activities becomes testimonial within the scope of the privilege because required of the accused in a pretrial lineup.”
In People v. Ballott (20 N Y 2d 600, 605) where the accused was compelled to put on a hat and a heavy coat such as that worn by the robber and, in addition, was required to speak, the court ruled that ‘ ‘ neither the identification procedure employed by the police nor anything the defendant was called upon to do at the police station * * * violated his privilege against self incrimination.”
In Breithaupt v. Abram (352 U. S. 432) the police took a blood sample from an unconscious person who had been involved in a fatal automobile accident to ascertain whether he was intoxicated at the time of the occurrence. The court affirmed a manslaughter conviction based in part on the blood sample. *763 Justice Clark clearly stated (p. 439) that “ as against the right of an individual that his person he held inviolable, even against so slight an intrusion as is involved in applying a blood test * * # must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road. And the more so since the test likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses.”
In the subsequent case of Schmerber v. California (384 U. S. 757), the defendant was convicted of driving while intoxicated. While under arrest and at a time when he was receiving treatment at the hospital for the injuries suffered in the accident, a physician at the direction of a police officer, and in spite of the refusal of the defendant — on the advice of counsel — to consent thereto, withdrew a blood sample from defendant’s veins. Over defendant’s objection that the compulsory blood test violated his right to due process of law under the Fourteenth Amendment, his privilege against self incrimination under the Fifth Amendment, his right to counsel under the Sixth Amendment and his right against unreasonable searches and seizures under the Fourth Amendment, the receipt of the test in evidence was sustained. The majority of the court affirmed the conviction and followed the decision in Breithaupt which held that the withdrawal of blood under such circumstances did not offend (p. 760) “ that sense of justice ” of which they spoke in Rochin v. California (342 U. S. 165) where a doctor forced an emetic solution through a tube into Bochin’s stomach over his protests. Schmerber also declared that the Fifth Amendment offers no protection against compulsion to submit to fingerprinting, photographing or measurements, to write or to speak for identification, to appear in court, to stand, to assume a stance, to walk or to make any particular gesture. The distinction would seem to be that the privilege is a prohibition against compelling ‘ ‘ communications ” of “ testimony ’ ’, but that a compulsion which merely makes the accused the source of “ real or physical evidence ” does not violate any of his constitutional rights.
The only case that I have been able to find dealing directly with the removal of facial hair is People v. Strauss (174 Misc. 881). There the District Attorney applied for an order requiring that the defendant be forcibly shaved and the hair on his scalp trimmed for his appearance in court. It appeared that since his arrest defendant had permitted his face to be *764 covered by a heavy beard. In granting the application the court said (p. 882):
“ Apart from the constitutional question, which is hereby resolved against the defendant, the propriety of the proposed act is amply supported by analogy, in the authorities just cited. The trial court may direct where the defendant shall sit, in what direction he shall face, and to stand up for the purpose of identification. Also, it may strip him of any artificial covering or disguise, and may compel him to submit to compulsory disrobing for the purpose of revealing bodily marks or characteristics which may aid in identification. It may hardly be gainsaid that a defendant may be compelled to appear cleanly washed, suitably dressed and with hair properly combed and brushed.
“ The defendant’s argument that this being a natural, rather than an artificially applied, disguise, provides a controlling basis for distinction, is not well taken. In all moot matters the stretching of basic assumptions may admit of sufficient in logic to support either side of the question. Therein lies the peril to sensible decision. That peril should be avoided here. Sound public policy seems to be the determining factor in a holding, which is now made, that any and all manner of disguise, whether naturally or artificially applied, is intolerable where — with all legitimate individual rights duly respected — a public right may be invaded by the use of a disguise with the reasonable likelihood of impeding thereby the enforcement of criminal law.”
It is not necessary to go as far as the court did in Brent v. White (398 U. 2d 503), where a penis scraping, revealing menstrual blood of a rape victim’s type, was held to be a permissible search of the person incident to a lawful arrest involving no intrusion of his constitutional rights, to uphold the contention of the District Attorney that this court may constitutionally compel a defendant to be forcibly deprived of his hirsute adornment in the furtherance of justice. Nor is the recent decision of the United States Supreme Court in Davis v. Mississippi (394 U. S. 721) a holding to the contrary. In that case, fingerprints taken from a youth at police headquarters at a time when eoncededly there was neither a warrant nor probable cause for his arrest were ruled to have been taken in violation of his constitutional rights and a conviction based upon the comparison of those fingerprints with fingerprints which matched those taken from the window of the place where the rape occurred was held to be reversible error when received in evidence at the trial. The court in Davis was dealing with tangible evidence offered as an exhibit at the trial. We are *765 not here dealing with tangible evidence but merely the permissible viewing of a person in such state of attire or adornment as he was in at the time the crime is alleged to have been committed by him. Therein lies the vital distinction between the factual situation here and the background in the Davis case.
However, the rub here, and the reason compelling a denial of the District Attorney’s application, is that the respondent, whose facial hair is sought to be removed, is not a defendant in any proceeding in this cownty. He is merely a suspect against whom the District Attorney has thus far established no probable cause warranting an arrest. True it is that in Rigney v. Hendrick (355 F. 2d 710) the court held that prisoners who are awaiting trial for other offenses were not denied due process and were not deprived of their privilege against self incrimination by being compelled to appear in a lineup to be viewed by victims of other offenses without first being arrested and charged with the specific crimes for which they would be viewed. The ratio decidendi of the majority of the court in that case was that since the prisoners were already in custody, no useful purpose would be served by rearresting them on a new charge, and that the failure to so arrest them did not ‘‘ immunize them from being looked upon or overheard for the purpose of identification.” (p. 715). I do not feel that if that decision were before the United States Supreme Court it would be upheld. I agree with the dissent in that case in which the court said (p. 717): “ I cannot rid myself of the conviction that the simple fact of confinement for want of bail does not authorize the police to deal with a presumptively innocent citizen as if he were a creature subject to their will. As I said in Butler v. Crumlish: ‘ The confinement of the unbailed defendant while awaiting trial is a necessary restraint on his liberty, but it confers no authority on the police to take him into their dominion to investigate other possible offenses. ’ ”
X have no doubt that if this respondent were walking the streets, I would have no authority, merely because the District Attorney suspected him of having committed a vicious criiñe, to order him into a lineup and to have- his beard forcibly removed. I do not see that there is any legal distinction between that situation and the fortuitous circumstance that the respondent happens to be in custody on an entirely unrelated charge. That detention may deprive him of freedom of movement, but it does not destroy any of his other rights as an individual.
The application of the District Attorney is denied for want of power.