Commonwealth *v.* Moss, Appellant.

Submitted December 5, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Isaiah W. Crippins,* for appellant.

*Benjamin H. Levintow, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., March 31, 1975:

This appeal arises from a judgment of the Court of Common Pleas of Philadelphia County wherein the appellant, Valaida Moss, was held to be in contempt. This judgment had its genesis on June 18, 1973, when appellant was indicted on charges of receiving stolen goods, forgery, and uttering and publishing forged instruments. On July 18, 1974, at the request of the Commonwealth, Moss was ordered by the lower court to give handwriting samples. She refused to do so upon the advice of counsel, citing Article I, Section 9 of the Constitution of the Commonwealth of Pennsylvania.[1] After the judgment of contempt which followed this refusal, appellant raises the identical claim in our Court. Appellant, however, raises no argument based upon either the Fourth or Fifth Amendment to the United States Constitution.

---

1. That Section of our Constitution provides:

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicintage; *he can not be compelled to give evidence against himself,* nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land." (Emphasis added.)

The precise issue raised by appellant, it is argued, creates a question of first impression before the Appellate Courts of our Commonwealth. While this claim is questionable in some regards it is clear that we do not lack relevant precedent in case law developments both in the Federal Courts and in courts of many of our sister states. The United States Supreme Court, in *Schmerber v. California*, 384 U.S. 757, 764 (1966), made the following statement:

"[B]oth federal and state courts have usually held that it [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, *to write* or speak for identification, to appear in court, to stand, to assume a stance, to walk, or make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." (Emphasis supplied).

Approximately one year later, the Supreme Court held specifically that the requirement that an accused supply handwriting exemplars was outside the protections of the U. S. Constitution's Fifth Amendment privilege against self-incrimination:

"A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its (the privilege) protection." See *Gilbert v. California*, 388 U.S. 263, 266-267 (1967).

On January 22, 1973, the United States Supreme Court issued decisions in *United States v. Dionisio*, 410 U.S. 1, and *United States v. Mara*, 410 U.S. 19. *Dionisio* upheld the constitutionality of requiring a subpoenaed witness before a grand jury to provide recorded voice exemplars, and in doing so reaffirmed its enunciations in *Schmerber*,

*supra,* and *Gilbert, supra.* More on point, *Mara* upheld an order holding the defendant in civil contempt for refusing to provide handwriting and printing exemplars to a grand jury.[2]

An annotation in *43 ALR 3d* 653, 660 *et seq.* provides a comprehensive collection of case citations from various other Federal[3] and State courts wherein it has been held that requiring an accused to provide handwriting exemplars is not violative of his privilege against self-incrimination. No case cited in that annotation holds to the contrary.

It was earlier noted that the appellant, Moss, does not base her argument on Federal constitutional grounds, but rather on alleged applicable protective prohibitions in our own State Constitution. In doing so, appellant seemingly claims the Pennsylvania constitutional provision creates a more protective or stronger privilege against self-incrimination than that provided in Article *V* of the U. S. Constitution. We cannot agree.

Article *I*, Section 9 of Pennsylvania's Declaration of Rights, *supra* provides: "In all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself . . ." The language in the Fifth Amendment to our Federal Constitution declares: "No person . . . shall be compelled in any criminal case to be a witness "against himself . . ."[4] Fifteen states use language identical to that

2. It should be noted however that the appellant in *Mara* argued that a handwriting exemplar requirement would violate his Fourth Amendment protections against unreasonable search and seizure, rather than a Fifth Amendment claim based on self-incrimination grounds.

3. See for example, *U. S. v. Irwin,* 322 F. Supp. 701 (W.D. Pa. 1971), where it was held that a handwriting exemplar in contrast to the contents of what is written, is like the voice or body itself—an identifying physical characteristic—outside the protection of the Fifth Amendment.

4. *Malloy v. Hogan,* 378 U. S. 1 (1964) held that protections afforded by the Fifth Amendment were obligatory on State courts by virtue of the Fourteenth Amendment.

found in the Fifth Amendment, while the precise phrase "to give evidence against himself" used in our Commonwealth's Constitution is found in the self-incrimination clauses of the constitutional provisions of twenty-one of our sister states.[5] The self-incrimination provisions which exist in Texas are identical to those in our Commonwealth. In *Olson v. State*, 484 S.W.2d 756 (1969), the Texas Court of Criminal Appeals passed upon a contention identical to that raised by the appellant in the instant case. We find the rationale and discussion of that Court particularly appropriate for quotation:

"It would, thus, appear that [the Texas section containing the self-incrimination provision], is declaratory of the common law, comparable in scope to the Fifth Amendment, both provisions having a common ancestry.

\* \* \*

"After much study and research, we conclude that [the Texas Section], is declaratory of the common law, and that it was the intent of the framers of our constitutional privilege to provide the citizens of the state with a safeguard similar to that contained in the Fifth Amendment. We adopt the view that the Texas constitutional self-incrimination privilege extends its protection to *testimonial* compulsion.

"This view has overwhelming precedential support, even in states with similar constitutional provisions.

"Accordingly, we hold that compelling a handwriting exemplar or sample does not constitute compelling an accused to 'give evidence against himself' in violation of [the Texas Section] of the Texas Constitution." (Emphasis supplied). *Id.*, 484 S.W.2d at 762 and 772. We agree with the conclusions of the Texas Court and find them applicable to the Pennsylvania constitutional provisions at issue in the instant case.

5. This calculation is based upon comparisons contained in 8 *Wigmore on Evidence* §2252, footnote 3, pp. 319-323 (McNaughton Rev. 1961).

Last, although appellant takes the position that this appeal raises a question of first impression, our courts have commented in the past on the requirement that an accused provide handwriting exemplars. Thus, in *Commonwealth v. Searles*, 450 Pa. 384, 302 A.2d 335 (1973), where it was held that a search warrant (for seizure of a defendant's notebook) was defective for lack of specificity, our Supreme Court noted: "If what was desired was handwriting samples, they could have been taken personally from the defendant at a later time." 450 Pa. at 388, 302 A.2d at 337. Also, cases in other areas provide guidance. In *Commonwealth v. Jefferson*, 445 Pa. 1, 8, 281 A.2d 852, 856 (1971), it was held that the Fifth Amendment self-incrimination provisions did not apply to "nontestimonial means of identification."[6] Our Courts have held in many cases that the immunity from self-incrimination is intended to extend the privilege to speech or the equivalent of speech. *Commonwealth v. Aljoe*, 420 Pa. 198, 216 A.2d 50 (1966); *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960); *Commonwealth v. Musto*, 348 Pa. 300, 35 A.2d 307 (1944).

While none of the above-cited Pennsylvania cases indicate reliance on the Pennsylvania Constitution for the conclusions reached, our earlier discussion should make it clear that we believe our own Article I, Section 9, provides no enlargement upon the self-incrimination protections afforded by the Fifth Amendment to the Constitution of the United States. Accordingly, we reject the claims of the appellant and hold that the lower court was warranted in finding her in contempt for failure to comply with its Order to provide handwriting exemplars.

Affirmed, and remanded for compliance with the Order of the trial court.

---

6. The challenge in that case was to compelling fingerprints from an accused, an excellent analogy to handwriting samples.