134 N.J. Super. 263 (1975)
339 A.2d 239
STATE OF NEW JERSEY, PLAINTIFF,
v.
WILLIAM CHRISTOPHER, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 25, 1975.
*265 Mr. Ralph L. Fusco, Assistant Prosecutor for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. John C. Love argued the cause for the Defendant.
MARZULLI, J.S.C.
The motions presented by the State and defendant present issues of first impression for this jurisdiction. The court will first deal with defendant's motions.
Defendant William Christopher is being tried for the murder of William Malone. A polygraph test was given by the State to its principal witness, Lucille Greiner, with her consent. Defendant requests that the questions, answers and the results of the test be made available to him. Secondly, he wants the results of the polygraph test which indicated the witness' answers had been evasive to many questions admitted into evidence for the purpose of attacking the credibility of the witness. The prosecutor chose to reject these results when he called Mrs. Greiner as a State's witness. Defendant was not provided with the information he seeks prior to trial.
The testimony of Mrs. Greiner was detrimental to defendant's case. She indicated that she had seen him on the porch of decedent's property soon after the alleged killing. There can be no question that the law requires the prosecutor to reveal any information which would tend to exculpate a defendant. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Taylor, 49 N.J. 440 *266 (1967); State v. Vigliano, 50 N.J. 51 (1967); State v. Harrison, 119 N.J. Super. 1 (App. Div. 1972). These cases follow the rationale set forth in State v. Vigliano in which the court held:
The primary duty of the State in a criminal prosecution is not to seek convictions; it is to see that justice is done and truth is revealed. [Emphasis supplied]
Under that rationale the prosecutor erred in not making the information available to defendant prior to trial. Therefore, defendant's motion for discovery regarding the polygraph test is granted.
Defendant's motion to have the results of the polygraph test admitted into evidence does not involve the issue of the reliability of the polygraph test itself. Our Supreme Court in State v. McDavitt, 62 N.J. 36 (1972), stated:
Polygraph testing has been developed to such a point of reliability that in a criminal case when the State and the defendant enter into a stipulation to have the defendant submit to a polygraph test and have the results introduced into evidence such stipulation should be given effect.
It is, therefore, apparent that in a proper case the results of the polygraph test are admissible for the limited purpose of indicating that the person tested was not telling the truth at the time of the test. It is for the jury to decide what weight and effect such evidence should be given. In the context of the present case the requirements set out in McDavitt, supra, have been met. Defendant requested the results of the test be admitted into evidence. The prosecutor,, by requesting that the witness take the test and consent to its use for any lawful purpose, has impliedly agreed to its use.
One may argue that the prosecutor's use of a polygraph test did not result in a clear, unequivocal and complete stipulation. However, a reading of United States v. Hart, 344 F. Supp. 522 (D.C. 1972) indicates the contrary. In that instance, a prosecution witness during the course of cross-examination *267 blurted out that he had undergone a lie detector test. The court found that the test requested by the prosecutor had indicated that the witness was lying and that the government was fully aware of this fact before it put the witness on the stand. The court then concluded that having requested that the witness undergo a polygraph test and then having rejected the results of those tests, the prosecutor was obligated to show (1) the prior experience with polygraph tests and with the particular testors which led the Bureau of Narcotics and Dangerous Drugs to have its witness submit to the test; (2) the basis for the subsequent doubts about the validity of polygraph tests which led to the disregard of the results, and (3) any other relevant material concerning the tests which defendants may request from the government on their behalf.
The court further stated that the results of the tests which the Government had the witness take were admissible on behalf of defendant because the Government initially thought they were reliable enough to assist it in evaluating the witness. The court ended with the note that this did not in any way change the general rule and permit a party to offer its own polygraph test into evidence.
The case presently before us falls within the same arena. Therefore, by following the dictates of Hart, supra, this court would also be following the guidelines set down in State v. McDavitt, supra. Defendant's motion to have the polygraph conclusions admitted into evidence is granted.
At trial a witness for the State testified that a navy watch cap found at the scene of the homicide had been sent to the State Police to be tested. A report indicated that hair had been found in the watch cap. Copies of the report had not previously been furnished to either the prosecutor or defense counsel.
The prosecutor moved for an order to compel defendant to supply hair samples to compare with the strands of hair found in the watch cap. Defense counsel objected, arguing that discovery comes too late; that there are no cases which *268 indicate hair comparison is scientifically reliable, and that the taking of the hair clipping would violate defendant's Fifth Amendment privilege against self-incrimination.
A reading of New Jersey Court Rules, R. 3:13-3, indicates that the right to discovery is an ongoing one. Under circumstances such as these, where the existence of the hair was not known to either side, the right to discovery would be contemplated under the rules.
Our courts have consistently held that the Fifth Amendment privilege against self-incrimination refers to "testimonial utterances," communication, and not to evidence of corporal features and other identifying characteristics of a person's physical or mental conditions. See State v. Alexander, 7 N.J. 585 (1951); State v. Blair, 45 N.J. 43 (1965), in which the court permitted blood samples to be admitted into evidence against the defendant. In State v. Cary, 49 N.J. 343 (1967), the court held that the physical properties of a person's voice are not testimonial or communicative and, therefore, permitted the State to compel the defendant to submit to a voice test. In State v. McKenna, 94 N.J. Super. 71 (Cty. Ct. 1967), the prosecutor's office moved for a court order to compel a defendant to submit to a tape recording of his voice. The court, in considering voice as a physical characteristic, stated:
It has long since been established that there are certain tests and examinations which are not violative of the privilege encompassed in the Fifth Amendment, and among these are the taking of fingerprints, photographing, physical examination for identifying characteristics, and voice identification tests.
As such, the court granted the motion.
State v. Carr, 124 N.J. Super. 114 (Law Div. 1973), involved a situation in which the court found that compelling a defendant to furnish the State with handwriting exemplars was not a violation of his Fifth Amendment rights.
The prevailing rationale for the decisions above seems to be best enunciated in United States v. Fiorovanti, 412 F. *269 2d 407 (1969), in which the United States Court of Appeals for the Third Circuit stated:
The proscription of the Fifth Amendment does not foreclose the the introduction of all testimony of the defendant; the mischief it seeks to avoid is the use of any process which compels a defendant to make testimonial utterances against his will. [Emphasis supplied]
Certainly hair samples can't be said to be a communication.
Hair samples of defendant shall be taken and submitted to a court-appointed expert, approved by both attorneys, the costs of such expert to be borne by the State.
The final issue to be determined by the court is whether the hair analysis should be admitted into evidence. This will depend upon the determination of the scientific reliability of the analyzation of hair. In State v. Walker, 37 N.J. 208 (1962), the New Jersey Supreme Court expressed its prevailing attitude concerning scientific aids when it stated:
When scientific aids to the discovery of truths achieve a high degree of recognition as to their reliability, we do not hesitate to take judicial notice of this fact and admit evidence obtained through their use when they are administered by qualified persons.
See State v. Dantonio, 18 N.J. 570 (1955); State v. Cerciello, 86 N.J.L. 309 (E. & A. 1914); Cortese v. Cortese, 10 N.J. Super. 152 (App. Div. 1950).
Whether the evidence will be admissible will have to await the results of the test, the desire of either party to move the results into evidence and the evidence relating to the scientific reliability of the hair comparison analysis.