Harold Baer, J.
Motion by petitioner, City Commissioner of Investigation, to compel respondent to provide handwriting exemplars for the purpose of comparison.
The investigation being conducted relates to two welfare checks that were intercepted before reaching the payee, welfare recipient, payee’s signatures forged, and checks cashed.
Respondent has been subpoenaed by petitioner, and has refused to comply with the subpoena.
Respondent claims that she is a target of a criminal investigation, and as such is protected by the Constitution from testifying against herself, and that her handwriting falls within the scope of the protection against self incrimination.
The law is well settled that a witness properly before an investigative body can be compelled to produce handwriting exemplars for the narrow purpose of comparing the physical characteristics of the witness’ handwriting with the physical characteristics of handwriting specimens of unknown or questionable authorship. In such circumstances, the Supreme Court has clearly held that the witness cannot refuse to produce the requested handwriting exemplars on the grounds that production would violate either his Fifth Amendment privilege against self incrimination (Gilbert v California, 388 US 263), or his Fourth Amendment protection against unreasonable search and seizure. (United States v Mara, 410 US 19; United States v Dionisio, 410 US 1.)
In United States v Mara, a witness subpoenaed before the Grand Jury refused to produce handwriting exemplars, asserting his Fourth Amendment protection against unreasonable search and seizure. Specifically relying upon its reasoning and holding in the Dionisio case, the Supreme Court rejected this assertion stating: "We have held today in Dionisio, that a grand jury subpoena is not a 'seizure’ within the meaning of the Fourth Amendment and, further, that the Amendment is not violated by a grand jury directive compelling production of 'physical characteristics’ that are 'constantly exposed to the public.’ * * * Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person’s script than there is in the tone of his voice.” (410 US at p 21.)
In Dionisio, a witness was called before a Grand Jury to *442 give voice exemplars for the purpose of aiding the Grand Jury in identifying a number of voices heard on certain tape recordings. The Supreme Court rejected the assertion by Dionisio that both the Fifth Amendment and the Fourth Amendment prohibited the Grand Jury from compelling production of the voice exemplars. In summarizing the opinion of the lower court, Justice Stewart stated (pp 3-4): "[V]oice exemplars, like handwriting exemplars or fingerprints, [are] not testimonial or communicative evidence, and * * * consequently the order to produce them would not compel any witness to testify against himself * * * [T]here [is] no Fourth Amendment violation, because the grand jury subpoena did not itself violate the Fourth Amendment, and the order to produce the voice exemplars would involve no unreasonable search and seizure within the proscription of that Amendment”.
The court went on to clearly state that the Grand Jury subpoena was not such a "seizure” of the person of Dionisio as to bring it within the purview of the Fourth Amendment, and, furthermore, that the compelled production of voice exemplars was not an unreasonable "search and seizure” of Dionisio’s voice. The latter conclusion was, of course, nothing more than a logical extension of the court’s earlier ruling in Katz v United States (389 US 347, 351) where it was held that the Fourth Amendment provides no protection for what "a person knowingly exposes to the public, even in his home or office”. According to the court, the physical characteristics of a person’s voice, or handwriting, or facial characteristics, being constantly exposed to public view, are not within the protection of the Fourth Amendment.
In Gilbert v California (388 US 263, supra), the defendant moved to reverse his conviction on the grounds that handwriting exemplars given by him to an F.B.I. agent during an investigation of a bank robbery should not have been admitted at his trial because the production of those exemplars violated his Fifth Amendment privilege against self incrimination. The Supreme Court rejected this claim stating (pp 266-267): "The taking of the exemplars did not violate petitioner’s Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of 'an accused’s communications * * * and the compulsion of'responses which are also communications’ * * * and not 'compulsion which makes a suspect or accused the source of "real or physical evidence” ******* *443 One’s voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying * * * characteristic outside its protection.”
Therefore, respondent is directed to appear at the New York City Department of Investigation on July 14, 1976, at 2:00 p.m., and give handwriting exemplars, and in the event respondent willfully fails to comply, the court will entertain an order punishing respondent for contempt.