Nathan D. HANSEN, Petitioner,

v.

The Honorable Robert F. OWENS, Judge of the Circuit Court, Washington County, Defendant.

No. 16977.

Supreme Court of Utah.

Oct. 8, 1980.

Phillip L. Foremaster, St. George, for petitioner.

Gary W. Pendleton, Deputy Washington County Atty., St. George, for defendant.

1. U.S.Const., Amend. V; Utah Const., Article I, § 12.

2. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *U.S. v.*

CROCKETT, Chief Justice:

In original proceedings, the petitioner requests this Court to enjoin enforcement of an order of the defendant, Circuit Judge of Washington County, which directs petitioner to furnish examples of his handwriting for use in connection with a charge of forgery against him.

This petition focuses attention upon the meaning and effect to be given to the protective provisions of our state and federal constitutions relating to being required to incriminate one's self.[1] It is to be noted that the Fifth Amendment to the United States Constitution provides that "[No person] shall be compelled in any criminal case *to be a witness* against himself, . . . ." Whereas, our state provision provides that "The accused shall not be compelled to *give evidence* against himself."

On defendant's behalf, it is urged that the two constitutional provisions, even though not identical in wording, are essentially the same in meaning. From that premise, support is garnered from holdings of the United States Supreme Court that the privilege against self–incrimination does not protect an accused from being the source of real or physical evidence against him.[2] It is urged that such rulings are applicable in the instant case.

We take cognizance of the fact that federal courts have generally held that the privilege applies only to evidence of a "testimonial" nature; and we do not doubt their soundness as applied to their particular facts. However, it seems significant that the framers of our Utah Constitution, in Section 12 of Article I, stated that "The accused shall not be compelled *to give evidence* against himself; a wife shall not be compelled *to testify* against her husband, nor a husband against his wife . . . ." (All emphasis herein is added.)

*Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and *U.S. v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

In legal formulations, it is to be assumed that the words used were chosen advisedly.[3] This is particularly true in such foundational documents as constitutions, which it can be assumed are framed with greater than usual care and deliberation. Consequently, when terms of clearly different meanings are used within the same framework, each should be given its own separate, commonly understood meaning. Judged in that light, it seems reasonable to assume that the phrase "to give *evidence* against himself," as used in our constitution, was intended to mean something different and broader than the phrase "to be a *witness* against himself" as used in the federal constitution. Such a distinction has heretofore been recognized by this Court.[4]

The significant aspect of this case is made evident by comparison with our case of *State v. Van Dam*,[5] cited by the defendant. There it was held not to be error to introduce evidence relating to hair samples obtained from the accused. There was not involved any compulsion or affirmative act by him. This situation is quite different. Here, the accused has made timely objection to being compelled to give evidence, which he asserts may be incriminating. In reference to the cases relied upon by the defendant, we note that this case goes beyond making observations or comparisons of an accused's appearance, or of his body, or its parts or substances obtained therefrom. We do not mean this decision to be understood as going beyond its particular facts. The order directs the accused to do the affirmative act of writing. Considered under our Utah constitutional provision, we see no controlling distinctions between making him respond to questions for possible use against him relating to an alleged crime, and making him write for that purpose.[6]

We further observe that we are somewhat perplexed by this proceeding because it is hard to believe that exemplars of the petitioner's handwriting could not be obtained from some other source. Nevertheless, it is our opinion that the order made is violative of the rights assured the petitioner by the provision of our constitution referred to and that it should be vacated. No costs awarded.

MAUGHAN and HALL, JJ., concur.

STEWART, Justice (dissenting):

I respectfully dissent.

In my view the privilege against self–incrimination contained in Article I, § 12 of the Utah Constitution is testimonial in nature and does not encompass a right to refuse to give a handwriting exemplar. The privilege extends only to prohibiting the state from calling the defendant to take the stand, compelling or improperly inducing a defendant to give oral testimony against himself, and prohibiting improper comment on the exercise of the privilege.

The majority's conclusion that there is "little distinction between making him [the defendant] respond to questions for possible

3. *Grant v. Utah State Land Board*, 26 Utah 2d 100, 485 P.2d 1035 (1971); *Horman v. Liquor Control Commission*, 21 Utah 2d 294, 445 P.2d 4 (1968); and *Metropolitan Water District v. Salt Lake City*, 14 Utah 2d 171, 380 P.2d 721 (1963).

4. See *Carter v. Cummings–Neilson Co.*, 34 Utah 315, 97 P. 334 (1908) wherein the court so stated and quoted the language of Chief Justice Bartch in the case of *Crooks v. Harmon*, 29 Utah 304, 81 P. 95 (1905) wherein he stated:
   The word "testimony" is a restricted, limited term, consisting only of the statements of witnesses, while the word "evidence" is a comprehensive term, embracing not only testimony, or the statements of witnesses, but also documents, written instruments, admis-sions of parties, and whatever may be submitted to a court or a jury to elucidate an issue or prove a case.
   Consistent with this is Rule 1(1), Utah Rules of Evidence which states that:
   "Evidence," as used in these rules, includes the means, oral, documentary or physical, used as proof on issues of fact.

5. Utah, 554 P.2d 1324 (1976); and see also *State v. Sirmay*, 40 Utah 525, 122 P. 748 (1912) and *State v. Mortensen*, 26 Utah 312, 73 P. 562 (1903).

6. We decide as we do herein in awareness of *State v. Spencer*, 28 Utah 2d 12, 497 P.2d 636 (1972).

use against him ... and making him write for that purpose," has a superficial but basically unsound logic to it. If a person were required to answer questions in writing, there would be a constitutional violation, but that is not the case here. The only thing at issue is whether the state can compel the display of a physical manifestation, not for the content of the writing, but only for the characteristics of the defendant's handwriting.

The majority opinion expands the constitutional privilege against self–incrimination to an extent which was not intended by the framers of our Constitution, which does not serve any fundamental constitutional purpose, which is in conflict with the manner in which other jurisdictions have construed similar or the same constitutional language, and which raises serious questions as to the continued admissibility of various kinds of evidence often critical to criminal prosecutions.

The majority's construction of the privilege extends beyond the interests that the privilege was designed to protect. The order was simply to obtain evidence of what is a physical characteristic of the defendant: the manner in which he writes. That the writing may serve to identify the defendant as one who committed a crime is of no consequence. There is no essential difference between requiring a writing sample and having a defendant stand for purposes of identification, walk in front of a jury to show his gait, show a scar, or don a piece of clothing. All such affirmative acts are generally held not to violate the privilege against self–incrimination. *McCormick on Evidence* § 124 (2nd ed. 1972). Yet, on the court's rationale, all those actions would be prohibited. The result is likely to create chaos in this important area of the law. Moreover, it is inconsistent with *State v. Spencer*, 28 Utah 2d 12, 497 P.2d 636 (1972), in which this Court held that the privilege was not violated by requiring an accused to appear in a lineup.

The Utah constitutional provision takes its meaning from the nature of the privilege as it had developed at common law. Referring to the federal and state constitutional provisions that recognize a privilege against self–incrimination, Wigmore in 8 *Wigmore on Evidence* § 2252 at 320–24 (3rd ed. 1940) found "universal judicial acceptance" of the view that the variety of phrasings of constitutional provisions providing protection from self–incrimination "*neither enlarges nor narrows* the scope of the privilege as already accepted, understood, and judicially developed in the common law." The specific application of the principle is "to be determined by the historical and logical requirements of the principle, regardless of the particular words of a particular constitution." *Id.* at 324.

*State v. Quarles*, 13 Ark. 307, 311 (1853), in referring to the privilege, emphasized: "[N]o one, be he witness or accused, can pretend to claim it beyond its scope at the common law ...." Referring to the federal and state constitutional wording of the privilege, Wigmore stressed:

But this constitutional sanction, being merely a recognition and not a new creation, has not altered the tenor and scope of the privilege; it has merely given greater permanence to the traditional rule as handed down to us. The framers of the Constitutions did not intend to codify the various details of the rule, or to alter in any respect its known bearings, but merely to describe it sufficiently for identification as a principle. The extreme brevity of the clauses naming the privilege is plain proof of this intention; and the great variety of phrasing, together with the undoubted unity of purpose running through all these legislative efforts, is a corroboration. 8 *Wigmore on Evidence* § 2252 at 320.

The federal and state constitutional provisions use three basic variations in the language establishing the privilege. One form, found in the federal constitution, provides that no person shall be a "witness" against himself. Twenty–four states, including Utah, couch the language in terms of protecting a person from giving "evidence" against himself. The remaining jurisdictions protect a person from "testifying" against himself.

The courts have not determined the scope of the privilege based on the particular language found in any given constitution. Rather, they have universally found no distinction in spirit or principle arising out of the particular language employed. Uniformly the privilege against self–incrimination has been found to apply only to testimonial and communicative evidence and not to evidence of a real or physical nature used merely for identification purposes.[1]

Particularly in point are those courts which have adopted that interpretation under constitutional language essentially identical to Utah's. *State v. White*, 102 Ariz. 162, 426 P.2d 796 (1967); *State v. Trotter*, 4 Conn.Cir. 185, 230 A.2d 618 (1967); *People v. Henne*, 11 Ill.App.3d 405, 296 N.E.2d 769 (1973); *Newman v. Stinson*, Ky., 489 S.W.2d 826 (1972); *State v. O'Conner*, La., 320 So.2d 188 (1975); *State v. Buzynski*, Me., 330 A.2d 422 (1974); *Gendron v. Burnham*, 146 Me. 387, 82 A.2d 773 (1951); *Reed v. State*, 35 Md.App. 472, 372 A.2d 243 (1977); *Baylor v. State*, Miss., 246 So.2d 516 (1971); *State v. Swayze*, 197 Neb. 149, 247 N.W.2d 440 (1976); *State v. Arsenault*, 115 N.H. 109, 336 A.2d 244 (1975); *State v. Strickland*, 5 N.C.App. 338, 168 S.E.2d 697 (1969); *State v. Thomason*, Okl.Cr., 538 P.2d 1080 (1975); *Commonwealth v. Moss*, 233 Pa.Super. 541, 334 A.2d 777 (1975); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974); *State v. Maher*, S.D., 272 N.W.2d 797 (1978); *Delk v. State*, Tenn., 590 S.W.2d 435 (1979); *Trail v. State*, Tenn.Cr.App., 526 S.W.2d 127 (1974); *Olson v. State*, Tex.Cr.App., 484 S.W.2d 756 (1972); *State v. Brean*, 136 Vt. 147, 385 A.2d 1085 (1978); *Artis v. Commonwealth*, 213 Va. 220, 191 S.E.2d 190 (1972); *Walton v. City of Roanoke*, 204 Va. 678, 133 S.E.2d 315 (1963); *State v. Moore*, 79 Wash.2d 51, 483 P.2d 630 (1971).

The validity of the commonly accepted interpretation follows from the purpose of the common law privilege against self–incrimination, which was to protect persons against torture–induced testimony and confessions. 8 *Wigmore on Evidence* § 2251 (3rd ed. 1940); see also *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); *State v. Holliday*, Iowa, 169 N.W.2d 768 (1966). Real and physical evidence such as fingerprints, hair samples, blood samples, footprints, handprints, photographs, physical appearance, and voice and handwriting exemplars, when used merely as a means of identification and to convey no other information, do not require or warrant protection under the privilege in light of the basic principles underlying the privilege. The fact that a handwriting sample is the end product of an exercise of will does not render it communicative or testimonial in nature.

Written words which are used only as an exemplar, and not for their meaning, communicate nothing. They merely identify the writer by demonstrating a physical characteristic. Virtually all courts, whether federal or state, which have considered the matter agree that a handwriting exemplar does not fall within the confines of the privilege.[2] Numerous cases have so held

---

1. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Gipson v. State*, Alaska, 609 P.2d 1038 (1980); *Coffey v. State*, 261 Ark. 687, 550 S.W.2d 778 (1977); *People v. Ellis*, 55 Cal.Rptr. 385, 65 Cal.2d 529, 421 P.2d 393 (1966); *People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977); *Parkin v. State*, Fla., 238 So.2d 817 (1970); *Wilson v. State*, 237 Ga. 657, 229 S.E.2d 424 (1976); *State v. Dillon*, 93 Idaho 698, 471 P.2d 553 (1970); *Frances v. State*, Ind., 316 N.E.2d 364 (1974); *Green v. State*, Ind., 274 N.E.2d 267 (1971); *State v. Sefcheck*, 261 Iowa 1159, 157 N.W.2d 128 (1968); *State v. Haze*, 218 Kan. 60, 542 P.2d 720 (1975); *People v. Davis*, 17 Mich.App. 615, 170 N.W.2d 274 (1969); *State v. Proctor*, Mo. App., 535 S.W.2d 141 (1976); *McCray v. State*, 85 Nev. 597, 460 P.2d 160 (1969); *State v. Christopher*, 134 N.J.Super. 263, 339 A.2d 239 (1975); *State v. Ramirez*, 78 N.M. 584, 434 P.2d 703 (1967); *Application of Mackell*, 59 Misc.2d 760, 300 N.Y.S.2d 459 (1969); *State v. Metzner*, N.D., 244 N.W.2d 215 (1976); *State v. McGrew*, 25 Ohio App.2d 175, 268 N.E.2d 286 (1971); *State v. Brotherton*, 2 Or.App. 157, 465 P.2d 749 (1970); *State v. Newton*, S.C., 262 S.E.2d 906 (1980); *State v. Doe*, 78 Wis.2d 161, 254 N.W.2d 210 (1977).

2. *United States v. Euge*, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Bailey v. State*, 254 Ark. 628, 495 S.W.2d 150 (1973); *People v. Sesslin*, 67 Cal.

pursuant to constitutional language the same as, or similar to, Article I, § 12 of the Utah Constitution. *In re Fernandez*, 31 Conn.Sup. 53, 321 A.2d 862 (1974); *People v. Reddock*, 13 Ill.App.3d 296, 300 N.E.2d 31 (1973); *State v. Thompson*, 256 La. 934, 240 So.2d 712 (1970); *Sutton v. State*, 4 Md. App. 70, 241 A.2d 145 (1968); *State v. Arsenault*, 115 N.H. 109, 336 A.2d 244 (1975); *State v. Greene*, 12 N.C.App. 687, 184 S.E.2d 523 (1971); *State v. Thomason*, Okl.Cr., 538 P.2d 1080 (1975); *Commonwealth v. Moss*, 233 Pa.Super. 541, 334 A.2d 777 (1975); *Moulton v. State*, Tex.Cr.App., 486 S.W.2d 334 (1972).

Georgia is the only state which I have found that supports the majority's approach. The Georgia Constitution has been construed to protect the individual from providing both testimonial and real evidence. *Creamer v. State*, 229 Ga. 511, 192 S.E.2d 350 (1972). In *State v. Armstead*, 152 Ga.App. 56, 262 S.E.2d 233 (1979), the court specifically held that forcing one to produce samples of his handwriting would violate the privilege against self–incrimination.

Since a handwriting sample used only for identification falls outside federal and state constitutional protection, a court which enters an order directing the rendering of an exemplar does not violate the privilege against self–incrimination, e. g., *United States v. Euge*, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980); *State v. Arsenault*, 115 N.H. 109, 336 A.2d 244 (1975); *State v.*

*Hudman*, 78 N.M. 370, 431 P.2d 748 (1967); *State v. Thomason*, Okl.Cr., 538 P:2d 1080 (1975).

The consequences of a failure to comply with an order compelling a handwriting exemplar is not an issue before this Court. But it is instructive to note the sanctions resorted to by other jurisdictions. A few courts have invoked the court's contempt power in response to a person's failure to comply with an order to give handwriting exemplars, i. e., *United States v. Doe*, 405 F.2d 436 (2nd Cir. 1968); *State v. Thompson*, 256 La. 934, 240 So.2d 712 (1970); *People v. Rinaldi*, 63 Misc.2d 702, 313 N.Y.S.2d 820 (1970). Other courts, adopting what to this writer appears to be a more effective and reasonable approach, have held that comment on a defendant's refusal to give evidence is not protected by the privilege against self–incrimination, allowing an inference to be drawn from such refusal. *United States v. Doe, supra; People v. Hess*, 10 Cal.App.3d 1071, 90 Cal.Rptr. 268 (1970); *State v. Haze*, 218 Kan. 60, 542 P.2d 720 (1975); *Clark v. State*, Fla., 379 So.2d 97 (1980); *State v. Smith*, La., 359 So.2d 157 (1978); *People v. Taylor*, 73 Mich.App. 139, 250 N.W.2d 570 (1977); *State v. Cary*, 49 N.J. 343, 230 A.2d 384 (1967).[3]

The majority opinion refers to *Carter v. Cummings–Neilson Co.*, 34 Utah 315, 97 P. 334 (1908), in support of its interpretation. But that was a civil case which did not even purport to define the term "evidence" as

---

Rptr. 409, 68 Cal.2d 418, 439 P.2d 321 (1968); *People By and Through Van Meveren v. District Ct. In and For Larimer County*, 187 Colo. 333, 531 P.2d 626 (1975); *Lacey v. State*, Fla. App., 239 So.2d 628 (1970); *Frances v. State*, Ind., 316 N.E.2d 364 (1974); *State v. Entsminger*, Iowa, 160 N.W.2d 480 (1968); *State v. Haze*, 218 Kan. 60, 542 P.2d 720 (1975); *People v. Petrac*, 89 Mich.App. 188, 280 N.W.2d 478 (1979); *State v. Boley*, Mo.App., 565 S.W.2d 828 (1978); *Hardison v. State*, 84 Nev. 123, 437 P.2d 872 (1968); *State v. Hudman*, 78 N.M. 370, 431 P.2d 748 (1967); *State v. Gillespie*, 100 N.J.Super. 71, 241 A.2d 239 (1968); *People v. Gabron Misc.*, 426 N.Y.S.2d 964 (1980); *Scoppetta v. Favors*, 87 Misc.2d 440, 384 N.Y.S.2d 693 (1976); *State v. Ostrowski*, 30 Ohio St.2d 34, 590 Ohio 2d 62, 282 N.E.2d 359 (1972); *State v. Fisher*, 242 Or. 419, 410 P.2d 216 (1966); *State v. Isham*, 70 Wis.2d 718, 235

N.W.2d 506 (1975); *State v. Doe*, 78 Wis.2d 161, 254 N.W.2d 210 (1977).

**3.** It has also been held, however, that one's refusal to allow his body to be used as a source of real or physical evidence cannot be commented upon. Although the use of a defendant's body for identification purposes is not protected by the right against self–incrimination, the defendant's refusal has itself been held to fall within the scope of testimonial and communicative evidence which is protected by the privilege. *State v. Andrews*, 297 Minn. 260, 212 N.W.2d 863 (1973); *State v. Dellveneri*, 128 Vt. 85, 258 A.2d 834 (1969). Whatever sanction, however, it bears emphasis that one cannot be coerced by force or brutality to submit to a handwriting exemplar.

that term is used in Article I, § 12. A general definition of the term "evidence," apart from its common sense application and historical background, is neither supportive of the majority opinion nor incongruous with the view expressed in this opinion.

WILKINS, J., concurs in the dissenting opinion of STEWART, J.