206 N.J. Super. 118 (1985)
501 A.2d 1049
STATE OF NEW JERSEY, PLAINTIFF,
v.
EDWARD F. NECE, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided August 13, 1985.
*120 Lewis Jackson, for plaintiff (Stephen G. Raymond, Burlington County Prosecutor, Attorney; Martin C. Mooney on brief).
David A. Luthman for defendant (Toll, Sullivan & Luthman, attorneys).
*121 HAINES, A.J.S.C.
The United States Constitution provides our citizens with a privilege against self-incrimination under its Fifth Amendment and, under the Sixth Amendment, with a right to counsel when charged with crime. In the present case, Edward Nece was charged, among other things, with driving while intoxicated. He was arrested and taken to the police station where he was videotaped while walking and otherwise moving about. He was not given any Miranda warnings and his request for counsel was refused. His motion to exclude the videotape from evidence in the municipal court was denied. He appeals from that denial on constitutional grounds.

I.

Miranda
The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself...." In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed2d 694 (1966), the Court laid down rules designed to enforce this guaranty. Those rules prohibit prosecutorial use of any statements obtained from a defendant "taken into custody or otherwise deprived of his freedom of action in any significant way," unless:
Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. [at 444, 86 S.Ct. at 1612]
Until 1984 it was the law in New Jersey that the Miranda rules were not applicable to motor vehicle violations. State v. Macuk, 57 N.J. 1, 16 (1970). That rule was abrogated by Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), in which the Court said:
We hold, therefore, that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested. [at 104 S.Ct. 3148; footnote omitted]
*122 In the present case, defendant was videotaped while in custody without receiving the benefit of the Miranda warnings. If the videotape constitutes evidence which is testimonial, the Fifth Amendment was violated. Otherwise, it was not.
Shortly after Miranda, the United States Supreme Court decided Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). That case involved drunk driving and a Fifth Amendment objection to the introduction into evidence of blood test results. Blood had been drawn from defendant over his objection. The Court held that the Fifth Amendment privilege did not apply. It said:
It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it.
Although we agree that this distinction is a helpful framework for analysis, we are not to be understood to agree with past applications in all instances. There will be many cases in which such a distinction is not readily drawn. Some tests seemingly directed to obtain "physical evidence," for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege "is as broad as the mischief against which it seeks to guard." Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 198 [35 L.Ed. 1110], [at 384 U.S. 763-764, 86 S.Ct. 1831-1832]
New Jersey followed Schmerber in State v. Macuk. The issue there was whether Miranda warnings were required before a drunkometer test could be administered. In denying the right to such warnings, the court said, citing Schmerber:
There is a clear legal right to require a motor vehicle operator arrested on probable cause for driving "under the influence" or "while impaired," to submit *123 to a chemical test for bodily substances to determine the amount of alcohol in his blood, or, for that matter, to a physical coordination test.... Since such tests, properly undertaken, violate no constitutional safeguard and are permissible as in any other non-testimonial situation and since our statute no longer requires consent in any situation, acquiescence is not legally significant or necessary. [57 N.J. at 14-15]
The reference to "a physical coordination test" was dicta. That issue was addressed, though briefly, in State v. Vega, 200 N.J. Super. 448 (Law Div. 1984), which involved defendant's arrest, breathalyzer testing and videotaping without benefit of Miranda warnings. The principal issue addressed by the court was whether Berkemer should be applied retroactively. It held that it should not, but also noted:
Likewise, the nonverbal conduct which defendant was required to engage in, i.e., various psycho-physical tests, would not be subject to suppression as they were also nontestimonial in nature. Macuk, supra, 57 N.J. at 14 [at 454]
No other New Jersey court has addressed the videotape question and it has not been raised in the United States Supreme Court.
The latter Court has decided that several types of evidence are nontestimonial: voice exemplar, United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); handwriting exemplars, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); a compelled statement in a line-up repeating words uttered by a robber-defendant, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); putting on a blouse for identification purposes, Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). In Dionisio, the Court said:
It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination. [410 U.S. at 5, 93 S.Ct. at 767]
In Holt, the Court said
... the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. [218 U.S. at 252-53, 31 S.Ct. at 6]
The Court has not considered whether evidence of physical movements, presented by videotape, is testimonial or not.
*124 The Third Circuit has held that evidence consisting of police testimony as to their visual observation of physiological symptoms, prior to arrest, did not violate the Fifth Amendment. United States ex rel. Ramos v. Pinto, 425 F.2d 1344 (3 Cir.1970). The court said:

Schmerber teaches that where there is "[n]ot even a shadow of testimonial compulsion upon or enforced communication by the accused" there is no self-incrimination. [at 1345-56]
In Appeal of Maguire, 571 F.2d 675 (1 Cir.1978), the court approved of the admission of evidence obtained through a compelled line-up appearance and the taking of fingerprints by force, if necessary. See also In Re Riccardi, 337 F. Supp. 253 (D.N.J. 1972), and U.S. v. Irwin, 322 F. Supp. 701 (W.D.Pa. 1971), both involving handwriting exemplars. But see United States v. Green, 282 F. Supp. 373 (S.D.Ind. 1968), in which the court, rejecting a demand that defendant submit handwriting exemplars, said:
The distinctions between compulsions of a communicative nature which are protected and those which produce only "identifying physical characteristics" or become the source of "real or physical evidence," which are not protected by the Fifth Amendment are nebulous. In view of the nature of the request in the case at bar, the Court concludes that the exemplars fall within the exceptions noted by the Supreme Court in Schmerber.... [at 374]
A number of New Jersey courts have applied the Fifth Amendment exception for nontestimonial utterances in situations not involving videotape presentations: State v. Cary, 49 N.J. 343 (1967) (voice tests); State v. Blair, 45 N.J. 43 (1965) (blood samples); State v. Alexander, 7 N.J. 585 (1951) (blood samples); State v. Christopher, 134 N.J. Super. 263 (Law Div. 1975), aff'd 149 N.J. Super. 269 (App.Div. 1977) (hair samples); State v. Carr, 124 N.J. Super. 114 (Law Div. 1973) (handwriting exemplars); State v. McKenna, 94 N.J. Super. 71 (Cty.Ct. 1967) (compelled submission to a voice recording). In State v. Mason, 164 N.J. Super. 1 (App.Div. 1979), however, the court considered the admission of nonverbal evidence in a drug case. Defendant had been taken into custody and asked whether she had any drugs. She first replied, "I don't know," but then produced from her clothing a bag containing drugs. She had not been *125 given any Miranda warnings. The court held that the facts thus produced must be suppressed, saying:
Had defendant made an oral admission of the fact that he possessed narcotics it would not have been admissible against her because she had not been warned of her right to remain silent. We perceive no reason why the result should not be the same when her response was of a different nature. Nonverbal responses to questioning are treated in the same way as are verbal responses. The privilege against self-incrimination extends to all acts intended to be of a testimonial or communicative character, whether in verbal or in other form. [at 4; citations omitted]
The application of the Fifth Amendment to evidence of physical movements has been considered in other states. Videotapes, made secretly, were admitted into evidence in People v. Knight, 28 Ill. App.3d 232, 327 N.E.2d 518 (Ill. App.Ct. 1975); Miranda warnings had been given to defendant before the videotaping occurred. State v. Arsenault, 115 N.H. 109, 336 A.2d 244 (Sup.Ct. 1975), held that the Fifth Amendment privilege did not apply to field sobriety tests. It concluded that such tests
are premised upon the relationship between intoxication and the externally manifested loss of coordination which it causes. These tests do not seek to compel from the defendant any knowledge he might have; nor do they involve the defendant's communicative facilities in any way. They only compel him to exhibit his physical characteristics of coordination. [336 A.2d at 247; citations omitted]
Commonwealth v. Kloch, 230 Pa.Super. 563, 327 A.2d. 375, 381 (Super.Ct. 1975) is to the same effect, as is State v. Faidley, 202 Kan. 517, 450 P.2d. 20 (Super.Ct. 1969). Contra Spencer v. State, 404 P.2d 46 (Okla. Crim. App. 1965).
A North Carolina court has considered the use of motion pictures in a drunk driving case. In State v. Strickland, 5 N.C. App. 338, 168 S.E.2d 697 (Ct.App. 1969), rev'd on other grounds 276 N.C. 253, 173 S.E.2d 129 (Sup.Ct. 1969), a motion picture of the accused taken after his arrest was held admissible to illustrate a police officer's testimony. However, use of the movie as substantive evidence was held to be impermissible.
McCormick, Evidence, § 124 (2 ed. 1972) discusses the privilege against self-incrimination as follows:

*126 The tendency has been to uphold any requirement that the accused engaged in nonverbal activity. Among those activities that have been held beyond the protection of the privilege have been participation in a lineup, seizure of marked money or other physical evidence from an accused, fingerprints taken from the accused, photographs taken of the accused while in custody, and requiring the accused to remove clothing or a toupee for identification purposes. The fact that activities may involve the active cooperation of the accused in such a manner that their reliability depends upon the accuracy of his cooperation has not brought them within the privilege. Thus requiring the accused to provide a handwriting example or to speak at a lineup does not violate the privilege nor does requiring a suspect believed to be intoxicated to perform a balance test. It is arguable that these activities involve the very dangers against which the privilege is intended to protect. When the activity is simple and such that the manner of its performance cannot reasonably be expected to affect the outcome of the investigatory procedure, there is little danger that the accused will be subjected to more than a minimal amount of coercion. This measure of coercion may be justified by the high reliability of the resulting evidence. Where, however, it is necessary to achieve the "accurate" cooperation of the accused, the situation becomes more analogous to a request for a satisfactory verbal answer, thus the danger of coercion being applied until satisfactory cooperation is achieved becomes greater. In addition, if the reliability of the proof depends upon the cooperation of a pressured suspect, the proof becomes subject to the same objections of unreliability as are leveled against verbal statements obtained under threat of legal coercion. Moreover, coercion applied not simply to permit the performance of a relatively simple procedure such as a blood test but rather to require the accused affirmatively to construct the basis for solidifying the case against him comes much closer to requiring the condemned to spring his own trap, thus violating the sense of decency underlying the privilege.
....
... the better view would seem to be that the privilege protects against compulsion to engage in those activities whose value as evidence to prove guilt is in any way related to the reliability of the accused's cooperation. [at 265-66; footnotes omitted]

II.

The Fifth Amendment Conclusion
In the present case, Nece was asked and answered numerous questions while being videotaped. All of these verbal exchanges are on the tape. Since they took place without Miranda warnings, now required by Berkemer, they must be suppressed. State v. Vega agrees.
*127 The decision as to whether the videotape showing the physical movements of Nece should be suppressed is not as easy. Dicta in numerous cases, federal, New Jersey and other states, indicate that such evidence is nontestimonial and not subject to the Miranda requirements. State v. Vega so holds. The language of Schmerber can be read to the contrary. The Court, in that case, said:
To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. [384 U.S. at 764, 86 S.Ct. at 1832]
The collection of guilt-determining evidence was the very purpose of the compelled videotape procedure here. On the other hand, Schmerber noted that "both federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to ... photographing ... to stand, to assume a stance, to walk or to make a particular gesture." Ibid.
The question, of course, is whether the images captured by the videotape constitute testimonial or nontestimonial evidence. It is a distinction, in the language of Schmerber, "not readily drawn." Evidence such as hair samples, blood, fingernails and the exhibition of one's face or figure are obviously nontestimonial, in the sense that an accused has no control over the makeup or content of such evidence. Can this be said of an accused who undertakes compelled physical movements which are recorded on videotape? The answer must be "yes."
There is no difference between what occurred here and standing, assuming a stance, walking or making a particular gesture, all of which, according to Schmerber, lack Fifth Amendment protection. Those states which have considered the admissibility of field sobriety tests when self-incrimination defenses were raised have held such tests to constitute admissible evidence. Testimony by lay witnesses as to the physical characteristics and capacities of a person charged with drunk driving has long been admissible as evidence of sobriety or its *128 absence. State v. Shiren, 9 N.J. 445 (1952). The test of admissibility suggested in McCormick, Evidence is "the reliability of the accused's cooperation." That test is satisfied in present circumstances. While an accused could pretend to be intoxicated, there is no reason to think that would happen after a drunk driving arrest and no reason to protect such pretense. Our courts have long accepted the results of field sobriety tests as reliable evidence of intoxication. State v. Morton, 39 N.J. 512, 514-15 (1963); State v. Higgins, 132 N.J. Super. 67, 70-71 (App.Div. 1975); State v. Pichadou, 34 N.J. Super. 177, 180-181 (App.Div. 1955).
It is apparent that the depiction of an accused's physical activities, whether by eye witness or video, is evidence considered, historically, to be nontestimonial, though in settings different from the present one. It is no less so in a drunk driving case.

III.

The Right to Counsel
Miranda requires the State to warn an accused, among other things, of the right to counsel. In the present case, not only was that warning omitted but defendant's request for counsel was refused. Defendant argues that his constitutional right to counsel was therefore abused, requiring the suppression of the video tape.
In addressing defendant's contentions, it is necessary, first, to consider and distinguish the Fifth and Sixth Amendments, both of which are applicable to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Fifth Amendment, as interpreted by Miranda, requires an accused to be advised of his right to counsel. The purpose of this requirement, however, is only "to guarantee full effectuation of the *129 privilege against self-incrimination." Johnson v. New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966). Since there is no privilege against self-incrimination with respect to nontestimonial evidence, there is no right to the counsel otherwise required by Miranda.
The Schmerber court said:
This conclusion [that the blood test evidence was not testimonial] also answers petitioner's claim that in compelling him to submit to the test in face of the fact that his objection was made on the advice of counsel, he was denied his Sixth Amendment right to the assistance of counsel. Since petitioner was not entitled to assert the privilege, he has no greater right because counsel erroneously advised him that he could assert it. His claim is strictly limited to the failure of the police to respect his wish, reinforced by counsel's advice, to be left inviolate. No issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented. The limited claim thus made must be rejected. [384 U.S. at 765-766, 86 S.Ct. at 1833]
The New Jersey rule is set forth in State v. Macuk, supra. Macuk's holding that Miranda warnings need not be given in motor vehicle cases was overturned by Berkemer, but its analyses relating to nontestimonial evidence and the right to counsel were not. Thus, the Court said:
The upshot of our statutory provisions and their history and the holdings of the United States Supreme Court is this. There is a clear legal right to require a motor vehicle operator, arrested on probable cause for driving "under the influence" or "while impaired", to submit to a chemical test of bodily substances to determine the amount of alcohol in his blood, or, for that matter, to a physical coordination test. A breath test must, of course, be administered in accordance with the requirements of N.J.S.A. 39:4-50.2 and a blood test in a medically acceptable manner and environment. The latter may be used on any occasion but will be especially useful where the person is physically unable or has refused to take a breath test. Since such tests, properly undertaken, violate no constitutional safeguard and are permissible as in any other nontestimonial situation and since our statute no longer requires consent in any situation, acquiescence is not legally significant or necessary. See State v. Tolbert, 100 N.J. Super. 350 (Cty.Ct. 1968). There is no legal right or choice to refuse, despite the authorized additional penalty for refusal in the case of the breath test. So it is inappropriate to warn that a test need not be taken, although it is quite fair to advise of the consequences of refusal to take a breath test. (See standard information and warning previously quoted.) See State v. Kenderski, 99 N.J.Super 224 (App.Div. 1968). Consequently the Miranda requirements are not applicable at all. It follows that defendant's contention that he did not voluntarily or understandingly consent to take the *130 breath test and that he was entitled to the advice of counsel with respect thereto obviously has no merit. [57 N.J. at 14-15]
See also State v. Pandoli, 109 N.J. Super. 1, 4 (App.Div. 1970); State v. Kenderski, 99 N.J. Super. 224, 228-229 (App.Div. 1968); State v. Vega, 200 N.J. Super. 448, 454 (Law Div. 1984).
Nece could not refuse to have his physical movements recorded on videotape since those movements are nontestimonial. As a result, the presence of an attorney would have made no difference. Nece had no right which an attorney could assert on his behalf.
The Sixth Amendment does not help defendant here. It reads:
In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.
The right to counsel so provided is not available to an accused until a critical stage of the prosecution has been reached. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), is the seminal case on this issue. In Kirby, the Supreme Court refused to afford a right to counsel to a pre-indictment, pre-charge line-up at a police station because it did not represent a critical stage in the prosecution of defendant. The Court said:
... all [cases where the Court found a right to counsel] involved points of time at or after the initiation of adversary judicial criminal proceedings  whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. [at 689, 92 S.Ct. at 1882.]
The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable. [at 689-90]
Accord State v. Sugar, 84 N.J. 1, 16 (1980); State v. Walker, 80 N.J. 187, 195 (1979).
*131 In Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), a Sixth Amendment right to counsel was afforded with respect to an interrogation which took place at a police station before defendant's initial court appearance. The ruling was restricted by Kirby which held:
The only seeming deviation from this long line of constitutional decisions [providing a right to counsel only after the criminal prosecution has commenced] was Escobedo v. Illinois. ... But Escobedo is not apposite here for two distinct reasons. First, the Court in retrospect perceived that the "prime purpose" of Escobedo was not to vindicate the constitutional right to counsel as such, but, like Miranda, "to guarantee full effectuation of the privilege against self-incrimination...." Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 1779, 16 L.Ed.2nd 882. Secondly, and perhaps even more important for purely practical purposes, the Court has limited the holding of Escobedo to its own facts.... [406 U.S. at 689, 92 S.Ct. at 1882]
Defendant Nece's compelled exhibition of his bodily movements, whether videotaped or not, occurred before any critical stage of the prosecution, as defined in Kirby, had been reached. Defendant's exhibition of his physical condition here cannot be distinguished from the exhibition of an accused's body in a line-up. Consequently, the Sixth Amendment right to counsel was not available to Nece.
It appears that there is a due process right to counsel under the Fourteenth Amendment. The Supreme Court has recognized this right when prejudicial procedures are used by the police, e.g. a suggestive line-up. Kirby, supra, 406 U.S. at 690-91, 92 S.Ct. at 1883; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In the present case, however, no police abuse or prejudicial procedure has been shown.
It follows that Nece had no right to counsel at the time the videotaping procedure was undertaken by the police in this matter and his effort to suppress the videotape on that ground must fail.

Conclusion
The defense motion to suppress the videotape is denied.