**STATE of Utah, Plaintiff and Appellee,**

v.

**Don Lavon ERICKSON, Defendant and Appellant.**

**No. 890125–CA.**

Court of Appeals of Utah.

Nov. 27, 1990.

D. Bruce Oliver (argued), Oliver & Parker, Salt Lake City, for defendant and appellant.

Herbert Wm. Gillespie, Duchesne County Atty., Rolan Uresk (argued), Machelle Fitzgerald, Deputy Duchesne County Attys., Roosevelt, for plaintiff and appellee.

Before GREENWOOD, BENCH and JACKSON, JJ.

MEMORANDUM DECISION

PER CURIAM:

This is an appeal from a conviction, following a jury trial, for Driving While Under the Influence of Alcohol. This appeal was scheduled for oral argument pursuant to Utah R.App.P. 31. The appeal raises three issues: (1) whether the original investigating officer had a reasonable articulable suspicion to justify the stop of defendant; (2) whether the original investigating officer had probable cause to arrest defen-

dant for driving under the influence; and (3) whether a second officer could continue the investigation without first advising the defendant of his rights pursuant to the fourth, fifth, and sixth amendments to the Constitution of the United States. Pursuant to Rule 31, this court affirms, without opinion, the trial court's rulings that the original arresting officer had a reasonable articulable suspicion to justify the stop and that there was probable cause to support the arrest by that officer. Based on our review of the record and the arguments of counsel, however, we dispose of the remaining issues presented by this case by opinion, pursuant to Utah R.App.P. 31(f).[1] Those issues are whether the defendant was entitled to a *Miranda* warning after the arrest by the original investigating officer (Mitchell), and before further investigation by a second officer (Gustin) and, if so, whether the results of that further investigation should have been suppressed.

During the evening of August 4, 1988, officer Mitchell was contacted by the police dispatcher and advised of a fight going on in Altona, during which shots were reported to have been fired. The dispatcher advised the officer that a pickup with clearance lights on top was leaving the scene. Officer Mitchell traveled to the remote area where he observed a vehicle matching the description traveling on a dirt road leaving the Altona area. He judged that the vehicle was traveling in excess of the speed limit. He did not recognize the vehicle as belonging to any of the residents of the area. After the vehicle turned onto the highway, the officer pulled in front of the vehicle, causing it to stop. Upon contacting the driver of the vehicle, Officer Mitchell observed a strong odor of alcohol. He observed that the driver was very careful about his speech, was breathing heavily, and appeared to be exerting an effort to control his balance. The defendant conversed with Officer Mitchell about the inci-

dent reported by the dispatcher and confirmed that shots had been fired. The defendant also admitted to the officer that he had been drinking, but the officer did not recall that he indicated how much he had consumed. Officer Mitchell concluded that defendant appeared to be under the influence of alcohol to the extent that he was not capable of safely driving the vehicle. The officer then placed the defendant under arrest for driving under the influence of alcohol.

Officer Mitchell left the defendant with Rudy Monsen, a member of a search and rescue group who heard the dispatcher's call and came to assist the officer. Monsen testified that he did not know the officer had placed the defendant under arrest, but heard the officer advise the defendant that he was to remain at the scene. Officer Mitchell advised Monsen to remain with the defendant until another officer arrived. Monsen testified that Trooper Gustin arrived 15 to 20 minutes later.

Officer Mitchell contacted Utah Highway Patrol Trooper Gustin to come to the scene where a suspect, who was "probably DUI", waited. Officer Mitchell then proceeded to the site of the fight that had been reported. Trooper Gustin did not understand that the defendant had been placed under arrest, but understood that he had been detained. Trooper Gustin administered field sobriety tests at the scene, including the horizontal gaze nystagmus test, finger count test, and walk and turn test. The finger count test required the defendant to count out loud. Based upon the defendant's performance on the field sobriety tests, Trooper Gustin placed the defendant under arrest and transported him to the police station where a breath test was performed. At the time of trial, the results of the breath test were not admitted due to the State's inability to satisfy the requirements for the evidentiary foundation. With the concurrence of

---

1. Utah R.App.P. 31(f) provides: "If it appears to the court after the case has been submitted for decision that a written opinion should be issued, the time limitation in paragraph (d) shall not apply and the parties will be so notified." A case determined by written order under paragraph (d) of Rule 31 "will not stand as prece-

dent, but, in other respects, will have the same force and effect as other decisions of the court." Utah R.App.P. 31(e). When this court exercises its option under Rule 31(f) to dispose of a case by written opinion, we deem that opinion, if published, to have the same precedential effect as other published opinions of this court.

both counsel, the jury was admonished to disregard all testimony previously given as to the test.

Prior to trial, the defendant made a motion to suppress all evidence obtained "pursuant to and including the initial traffic stop." The grounds for the motion were "the Fourth, Fifth and Sixth Amendments to the Constitution of the United States, and U.C.A. 77–35–12 (1982), and Constitution to the State of Utah, Article 1, Sections 7, 12, and 14." The trial court ruled that the initial traffic stop was supported by a reasonable articulable suspicion and was not violative of the fourth amendment and that the arrest was supported by probable cause. The trial court then turned to the final issue of "whether or not *Miranda* is required for the police officer to conduct the field sobriety test" and more specifically, whether the field sobriety tests were communicative or testimonial and thus within the scope of *Miranda*. The trial court ruled that the defendant had been placed under arrest by officer Mitchell, was in a custodial setting and, as such, was entitled to the *Miranda* warning. The trial court then instructed counsel for the state that it was the state's burden to show that the field sobriety tests were an exception to the *Miranda* requirement. The trial court took considerable care in framing the issue for the parties and invited them to provide written argument. Neither party did so. At trial, the defendant "renewed" the motion to suppress. The trial judge then indicated his understanding that he had ruled that the defendant was entitled to a *Miranda* warning and his belief that the defense was obligated to pursue the matter further. The trial court ruled that the failure to timely do so constituted a waiver of the suppression issues. The defendant preserved his objections to the admissibility of evidence that he had sought to have suppressed.

Although the defendant's arguments in the trial court focused on self-incrimination, his arguments on appeal are premised on the sixth amendment right to have counsel present at all critical stages in the proceeding. The two issues, however, cannot be treated separately. The purpose of *Miranda*'s requirement that a defendant be advised of the right to counsel is to guarantee effectuation of the privilege against self-incrimination. *See State v. Nece*, 206 N.J.Super. 118, 501 A.2d 1049, 1055 (N.J.Super.Law Div.1985). Where there is no privilege against self-incrimination with respect to non-testimonial evidence, there is no right to counsel otherwise required by *Miranda*. *Id.* (citing *Schmerber v. California*, 384 U.S. 757, 766, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966)); *see also People v. Burhans*, 166 Mich.App. 758, 421 N.W.2d 285, 289 (1988); *Salt Lake City v. Carner*, 664 P.2d 1168, 1173 (Utah 1983) (Durham, J., concurring) ("The basic aim of the *Miranda* warning is to secure the privilege against self-incrimination."). We thus consider the self-incrimination issue in conjunction with the consideration of the defendant's sixth amendment argument.

In the trial court, the defendant relied upon *Salt Lake City v. Carner*, 664 P.2d 1168 (Utah 1983), which construed the self-incrimination clause contained in Article 1, Section 12 of the Utah Constitution in the context of field sobriety tests. In *Carner*, the majority concluded that the defendant was not in custody at the time of the tests and, accordingly, held that he was not "compelled to give evidence against himself" in violation of the Utah Constitution. Based upon that ruling, the majority opinion states, "[w]e do not reach the question whether the taking of field sobriety tests constitutes giving evidence against oneself as protected by Article I, Section 12, Utah Constitution." 664 P.2d at 1172. Despite this express reservation in the opinion, the defendant in this case argued below that, once it was determined that the defendant was in custody, *Carner* required suppression of all further evidence in the absence of a *Miranda* warning.[2] Because the court

---

**2.** The Utah Supreme Court has not expressly ruled upon the question of whether *Miranda* warnings are required under the Utah Constitu-

tion. *Sandy City v. Larson*, 733 P.2d 137, 141 (Utah 1987) (Durham, J., concurring and dis-

expressly reserved the question of whether field sobriety tests in a custodial setting would trigger the right under the Utah Constitution against self-incrimination, we find defendant's assertion to be without merit. Concurring in *Carner*, Justice Durham took the position that the defendant was in custody, but the results of field sobriety tests were not testimonial in nature, and instead constituted "real or physical evidence." Accordingly, she concluded, "[s]uch tests do not violate an accused's privilege against self-incrimination because they are nontestimonial in nature." 664 P.2d at 1173 (Durham, J., concurring).

■ The issue reserved in *Carner* was determined in *Salt Lake City v. Womack*, 747 P.2d 1039 (Utah 1987), where the defendant claimed that field sobriety tests violated her right against self-incrimination under Article I, Section 12 of the Utah Constitution. The Utah Supreme Court ruled:

> Womack contends that she was compelled to take the roadside sobriety tests and thus was forced to give evidence against herself ...
>
> ... In [*American Fork City v. Crosgrove*, 701 P.2d 1069 (Utah 1985) ], we held that the privilege against self-incrimination expressed in the state constitution is limited to evidence that is testimonial or communicative in nature. Specifically, we ruled that the defendant's privilege against self-incrimination was not violated when he was required to submit to a breathalyzer test under threat of losing his driver's license.
>
> ... Under *Crosgrove*, there is no violation of the privilege against self-incrimination by the requirement that a motorist perform field sobriety tests.

747 P.2d at 1042. Based on the foregoing, we conclude that the defendant's right against self-incrimination under the Utah Constitution was not violated by the field sobriety tests because he was not compelled to give testimonial evidence against himself. The fact that defendant was required to count out loud does not compel a different conclusion. *See, e.g., State v.*

*Thompson*, 237 Mont. 384, 773 P.2d 722 (1989) (field sobriety tests found not testimonial, although tests included reciting the alphabet); *People v. Burhans*, 166 Mich. App. 758, 421 N.W.2d 285 (1988) (field sobriety tests found not testimonial, although tests included reciting the alphabet and counting).

We next consider whether the defendant's rights against self-incrimination under the United States Constitution were violated by administration of field sobriety tests. The language of the United States Constitution's self-incrimination clause differs somewhat from the analogous clause in the Utah Constitution. Article I, Section 12 of the Utah Constitution provides, in relevant part, that "the accused shall not be compelled to give evidence against himself...." In contrast, the fifth amendment to the United States Constitution includes the statement that no person "shall be compelled in any criminal case to be a witness against himself." In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends." 384 U.S. at 761, 86 S.Ct. at 1830–31. The Court explained that the "distinction which has emerged ... is that the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." 384 U.S. at 764, 86 S.Ct. at 1832. This distinction has been applied to field sobriety tests in a number of reported cases. *See, e.g., Commonwealth v. Carey*, 26 Mass.App.Ct. 339, 526 N.E.2d 1329 (1988); *People v. Burhans*, 166 Mich.App. 758, 421 N.W.2d 285 (1988); *State v. Breeden*, 374 N.W.2d 560 (Minn.App.1985); *State v. Thompson*, 237 Mont. 384, 773 P.2d 722 (1989); *State v. Knoch*, 86 Or.App. 15, 738

senting). Our disposition in this case makes it unnecessary to reach this issue.

P.2d 979 (1987); *State v. Nece*, 206 N.J.Super. 118, 501 A.2d 1049 (N.J.Super.Law Div.1985). We agree with Justice Durham in her concurring opinion in *Salt Lake City v. Carner*, that "the overwhelming weight of authority holds that, although a suspect or accused cannot be 'compelled' to perform roadside or field sobriety tests, such tests do not violate an accused's privilege against self-incrimination because they are nontestimonial in nature." 664 P.2d at 1173.

Having concluded that the defendant was not entitled to a *Miranda* warning prior to the field sobriety tests, we further conclude that the right to counsel was not violated. *See Schmerber*, 384 U.S. at 766, 86 S.Ct. at 1833 (because no right against self-incrimination was implicated in this case, there was no right to counsel as to that advice.)

For the reasons set forth herein, we hold that defendant's motion to suppress was properly denied.[3] The judgment is affirmed.

All concur.

---

**3.** The trial court's ruling on the suppression motion was based upon his belief that defendant had waived the self-incrimination issue as to the field sobriety tests by not providing further briefing. Although the record reflects that this conclusion was erroneous, we conclude that the motion to suppress, nevertheless, was properly denied. *See State v. Bryan*, 709 P.2d 257, 260 (Utah 1985) ("On appeal, this Court may affirm the trial court's decision on any proper grounds, even though the trial court assigned another reason for its ruling.")