**Juanita KENYON, Plaintiff and Appellee,**

v.

**Steve REGAN, Defendant and Appellant.**

**No. 890462–CA.**

Court of Appeals of Utah.

Feb. 10, 1992.

James H. Deans, Salt Lake City, for defendant and appellant.

Bruce Plenk, Salt Lake City, for plaintiff and appellee.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

This appeal involves a landlord-tenant dispute. The landlord defendant appeals from the trial court's judgment awarding the tenant plaintiff a rebate of all rent paid after the landlord received notice that the rental property was uninhabitable but refused to make meaningful repairs. We reverse and remand.

## FACTS

On October 15, 1986, the plaintiff, Juanita Kenyon, rented a house from defendant, Steve Regan, for $295 per month. The parties' verbal arrangement was for a month-to-month tenancy. Kenyon lived in the house until March 31, 1988. Although the house was in a state of some disrepair when Kenyon moved in, its condition only deteriorated. By November 1987, the house was uninhabitable by any reasonable standard. Among other major defects, the plumbing leaked, the furnace did not work, and the living room ceiling had collapsed. Nonetheless, during the seventeen and one-half months she lived in the house, Kenyon paid Regan over $4000 in rent. Although Kenyon had missed several rent payments earlier, because she could not afford to move anywhere else and did not want to be evicted, she continued to pay rent and live in part of the house even after it became dilapidated. Regan took no contemporaneous action to collect the missed rental payments.

Kenyon repeatedly asked Regan to repair the major defects in the house. Aside from making minor plumbing repairs, however, Regan completely failed to heed Kenyon's demands. Finally, Kenyon contacted the county health department, which inspected the house and noted many health and safety code violations. In a series of five separate letters beginning in November 1987, the health department notified Regan of the deficiencies and ordered him to repair them. Regan also ignored the health department's demands, however, and the defects persisted. Finally, at the end of March 1988, Kenyon moved out of the house and sued Regan to recover all rent she had paid.

At trial, the court found that the health department's letters put Regan on notice that the house was uninhabitable and in immediate need of substantial repair. Because Regan failed to make the necessary repairs, the trial court ruled that Kenyon was constructively evicted from the house from December 1, 1987, through March 31, 1988, although she remained in actual possession. Consequently, the court entered judgment in favor of Kenyon for $1180 (representing four months rent at $295), offset by Kenyon's accrued rent deficiency in the amount of $440.

Although we heard this case on our Rule 31 calendar, after reviewing the record and arguments of counsel, we have chosen to dispose of the issues in this case by written opinion, as authorized by Utah R.App.P. 31(f).[1]

Resolution of this appeal turns on two issues: (1) Does the theory of constructive eviction apply when the tenant remains in possession of the rented property? (2) If the constructive eviction theory does not apply, can the judgment nonetheless be

---

1. Utah R.App.P. 31 permits the court to hear fully briefed appeals "involving uncomplicated factual issues" in the context of, inter alia, "judgments or orders based on uncomplicated issues of law," on an expedited basis. Utah R.App.P. 31(b). Oral argument is received and the court ordinarily issues its written order summarily deciding the case within two days. Utah R.App.P. 31(d). The Utah Court of Appeals makes rather liberal use of Rule 31. Part of our willingness to do so is Rule 31(f), which permits us to decide a Rule 31 case by written opinion if, following consideration, it appears the case was not amenable to summary treatment after all. Such was the case here. Although Rule 31(e) states that cases decided under Rule 31 "will not stand as precedent, but, in all other respects, will have the same force and effect as other decisions of the court," we regard this limitation as affecting only cases resolved by simple order under Rule 31(d). When this court exercises its option under Rule 31(f) to dispose of a case by written opinion, that opinion, if published, has the same precedential effect as other published opinions of this court. See State v. Erickson, 802 P.2d 111, 112 n. 1 (Utah App.1990).

affirmed on an implied warranty of habitability theory?

## CONSTRUCTIVE EVICTION

In its judgment and order in this case, the trial court characterized the legal principle upon which it based its decision as constructive eviction. Regan argues that the trial court erred in applying the theory of constructive eviction to the circumstances in this case. Regan contends that for the theory of constructive eviction to apply, not only must the landlord substantially interfere with the tenant's right of possession and enjoyment of the property, but the tenant must also abandon the property. *See Brugger v. Fonoti,* 645 P.2d 647, 648 (Utah 1982); Backman, *Landlord–Tenant Law: A Perspective on Reform in Utah,* 1981 Utah L.Rev. 727, 732 (1981). We agree.

■■■ Under established precedent, constructive eviction is a defense to a landlord's action for nonpayment of rent during some part of a lease or tenancy period, which a tenant may raise only after actually vacating the leased property.[2] *See Backman,* 1981 Utah L.Rev. at 732. Because the whole point of "constructive eviction" is that the landlord basically drove the tenant out through the landlord's action or inaction, "[a]bandonment or surrender is an essential element of constructive eviction." *Fernandez v. Purdue,* 30 Utah 2d 389, 518 P.2d 684, 686 (1974). Consequently, constructive eviction cannot ordinarily be claimed if the tenant remains in possession of the property. *Id.* Although the trial court found that Regan received adequate notice of the defects interfering with Kenyon's possession and enjoyment of the house and failed to remedy those defects, because Kenyon remained in possession of the house and continued to pay full rent, the theory of constructive eviction does not apply.[3]

## IMPLIED WARRANTY OF HABITABILITY

Kenyon's primary theory at trial was that the landlord breached an implied warranty of habitability. The trial court did not embrace that theory because of the unsettled state of the law at that time. *See P.H. Inv. v. Oliver,* 778 P.2d 11, 14 (Utah App.), *cert. granted,* 783 P.2d 53 (1989). *See also* Backman, 1981 Utah L.Rev. at 741. On appeal, Kenyon urged that we recognize such a warranty, find that it was breached in this case, and affirm on that basis under the doctrine that appellate courts may affirm a trial court's decision on any proper ground even if not relied upon by the trial court. *See Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 & n. 6 (Utah 1988); *Estate of Hock v. Fennemore,* 655 P.2d 1111, 1114 (Utah 1982).

While we had the matter under advisement, the Utah Supreme Court settled the debate, recognizing that an implied warranty of habitability is enforceable against a landlord who rents residential property. *Wade v. Jobe,* 818 P.2d 1006 (Utah 1991);

---

**2.** In order to effectively assert the defense of constructive eviction, the tenant also must have provided the landlord with adequate notice of the alleged defects and allowed the landlord a reasonable amount of time to remedy the defects before moving out. *See Brugger,* 645 P.2d at 648.

**3.** Counsel for Kenyon argued that we should follow the lead of courts in some jurisdictions that have liberalized constructive eviction requirements. *See, e.g., Cox v. Hardy,* 371 S.W.2d 945, 946 (Ky.1963) (where continued deterioration of leased premises creates a cumulative effect, tenant does not waive right to claim constructive eviction simply because he did not leave premises immediately). Other courts have stretched the theory to create new notions such as partial constructive eviction. *See, e.g., Dennison v. Marlowe,* 106 N.M. 433, 744 P.2d 906, 910 (1987) (where deterioration substantially interferes with possession and use of part of leased premises, tenant is not required to vacate premises to assert partial constructive eviction and claim partial rent offset), 108 N.M. 524, 775 P.2d 726 (1989) (reaffirming doctrine in prior decision and affirming offset after remand); *Minjak Co. v. Randolph,* 140 A.D.2d 245, 528 N.Y.S.2d 554, 557 (N.Y.App.Div.1988) (partial constructive eviction theory applied in residential setting). Recognition in Utah of an implied warranty of habitability, discussed *infra,* obviates any impetus to our tampering with the constructive eviction doctrine along the lines suggested.

*P.H. Investment v. Oliver,* 818 P.2d 1018 (Utah 1991). It does not follow, however, that Kenyon is automatically entitled to affirmance. The trial court's findings, being directed to a constructive eviction approach, are largely inapposite. In view of the Supreme Court's recognition of an implied warranty of habitability, remand is appropriate so that the trial court can consider, given the evidence it heard and the guidance set forth in *Wade* and *Oliver,* whether the warranty was breached in this case. If the warranty was breached, the trial court must also fix an appropriate award of damages. *See Wade,* 818 P.2d at 1012–13.

## CONCLUSION

The trial court erred in applying the constructive eviction doctrine to this case. The judgment is accordingly reversed. The case is remanded for consideration of whether the implied warranty was breached, for a determination of damages if it was, and for the entry of appropriate findings supporting the court's conclusions. The court may hold a further evidentiary proceeding if it determines that either side was disadvantaged at trial by the then unsettled state of the law.

BENCH and JACKSON, JJ., concur.